Eastern District of Kentucky
F I L E D
MAR 28 2014
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Civil Action No. 11-334-HRW

THE OHIO CASUALTY COMPANY,                  PLAINTIFF,

v.

BARBARA COX, *et al.*,                              DEFENDANTS,

v.

JERRY HENRY, *et al.*,                             THIRD-PARTY DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Barbara Cox's Motion for Summary Judgment [Docket No. 49] and Plaintiff's Motion for Partial Summary Judgment [Docket No. 50]. The motions have been fully briefed [Docket Nos. 53, 54, 55 and 56]. For the reasons stated herein, the Court finds that factual issues preclude summary judgment.

I.    BACKGROUND

This case arises from Plaintiff The Ohio Casualty Company's (hereinafter "Ohio Casualty") role as surety for a sole proprietorship, David Cox d/b/a DBR Engineering.

On January 31, 2007, David Cox requested bonding from Ohio Casualty through David Henry at Griffith Catlett & Hampton Insurance (hereinafter "GCH") for a potential DBR Engineering job in the range of $2.25 to 2.5 million. [Bid Request, Docket No. 49-3]. This request was denied by Ohio Casualty.

On February 5, 2007, Mr. Henry sent Ohio Casualty an email advising the following: "I didn't know at the time, but [DBR] actually had 2 requests we were to be looking at. The first was obviously the large job we turned down. The second is a performance/payment request for the attached job." [Docket No. 49-4].

On February 20, 2007, Ohio Casualty approved DBR's request for $314,099 bonding on this second DBR Engineering job and sent a letter to Mr. Henry forwarding an Indemnity Agreement for execution. [Docket No. 49-5].

The Indemnity Agreement (hereinafter "Agreement") provides, in pertinent part:

> Second: That we, the contractor (and the indemnitors, if any) will at all times indemnify and save the surety harmless from and against any and all loss, cost, claim, demand, liability and expenses of whatever kind or nature which it shall at any time sustain, incur, or be put to, for by reason, or in consequence of such bonds which have been or may hereinafter be executed or procured on behalf of the contractor, including all costs, counsel fees and expenses incurred in investigating any claims made under or concerning such bonds, or in collecting any premiums due or losses sustained on such bonds, or in prosecuting or defending any actions, suits, or other proceedings which may be commenced or prosecuted against the contractor, or

against the surety, upon such bonds, or in anyway relating thereto; we
the contractor (and the indemnitors, if any) further agreeing, that in
any accounting which may be had between the surety and contractor,
or between the surety and the indemnitors, or either or both of them,
the surety shall be entitled to charge for any and all disbursements
made by it in good faith in and about the matters herein contemplated
by this Agreement of Indemnity, under the belief that it is or was
liable for the sums and amounts so disbursed, or that it was necessary
or expedient to make such disbursements, whether or not such
liability, necessity or expediency existed; and that the vouchers or
other evidence of any such payments made by the surety shall be
*prima facie* evidence of the fact and amount of our liability to the
surety.

[Docket No. 49-2].

On its first page, the Agreement states that is "made and entered into this 1st day of February, 207." [*Id.*]. Pages three and four bear the signatures of David Cox and his wife, Barbara Cox, as well as that of Jerry Catlett, as a witness. [*Id*]. On the last page, there are three acknowledgments by David Henry, as Notary Public, for DBR, David Cox and Barbara Cox, all dated February 1, 2007.

Barbara Cox denies signing the Agreement.

When Ohio Casualty initially approved a final bond in the amount of $314,099.00 on February 20, 2007, it did so on the condition that DBR, David Cox and Barbara Cox execute the Agreement and commit to obtaining a CPA prepared financial statement as of December 31, 2006. [Affidavit of Paul Chapman, Docket No. 53-1, ¶3]. However, the latter was not provided.

[*Id.*, ¶5]. After issuance of the $314,099.00 bond, Ohio Casualty received no further communication from GCH concerning DBR. As a result, its underwriter Paul Chapman, sent an email to GCH on July 21, 2007, requesting the status of Principal and the December 31, 2006, financial statement. [*Id.* ¶4]. Chapman received no response to his inquiry. Thereafter, on September 19, 2008, Chapman received a new submission on DBR from another agent, Smith-Manus. The submission included updated financial information, work-in-process information, and bank line of credit information. Based on the updated financial information, Chapman approved the requested bond in the approximate amount of $400,000.00, on the condition that DBR obtain a current year-end CPA prepared financial statement. [*Id.* ¶5]. Subsequently, on February 20, 2009, Chapman's office received a phone call from Henry of GCH wanting to know why Chapman had agreed to write a bond for DBR and was considering further bonds for DBR. He was told that Smith-Manus was being given the same opportunity given to provide a CPA prepared financial statement as of December 31, 2008. [*Id.*]. Smith-Manus obtained the December 31, 2008, CPA prepared financial statement for DBR and presented it to Chapman for consideration. [*Id.* ¶7]. Ohio Casualty, as surety, executed various other performance and payment bonds for DBR, including, but not limited to, work related to the University of Kentucky Additions

and Renovations to Livestock Disease Diagnostic Center ("UK Livestock Project") on May 6, 2009, in the amount of $1,929,000.00, and work related to the University of Kentucky College of Pharmacy ("UK Pharmacy Project") on September 27, 2010, in the amount of $2,394,000.00.

DBR Engineering defaulted in its performance and payment obligations under its bonded contracts and Ohio Casualty received notice of various claims thereunder. In performance of its bonded obligations for DBR, Ohio Casualty has currently paid $759,997.44 in claims and incurred $44,386.74 expenses, for a total loss amount of $803,486.66. [Affidavit of James Rumpf, Docket No. 53-5].

David Cox died on May 31, 2011. Barbara Cox was appointed and is currently serving as Administratrix for his estate. Ohio Casualty filed a Proof of Claim on the Estate of David Cox on July 27, 2011, for $925,965.09 plus attorney's fees. Mrs. Cox denied Ohio Casualty's claim against the Estate. Ohio Casualty demanded that she indemnify, reimburse, and exonerate Ohio Casualty for its losses and expenses resulting from the execution of its bonds. Mrs. Cox did not comply. This litigation followed.

In its Complaint [Docket No. 1] and Amended Complaint [Docket No. 30], against Mrs. Cox in both her capacity as Administratrix for her husband's estate and individually, Ohio Casualty alleges the following causes of action: breach of

Indemnity Agreement (Count I), exoneration (Count II), *quia timet* (Count III), specific performance (Count IV), access to books and records (Count V) and recovery pursuant to KRS § 412.080 (Count VI).

Mrs. Cox filed a Third Party Complaint against Jerry Catlett, David Henry and Western Surety Company [Docket No. 5], alleging negligence and violation of KRS § 423.010, *et seq.* and seeking to enforce the bond against Western Surety.

Barbara Cox seeks summary judgment as to all claims asserted against her individually by Ohio Casualty. Ohio Casualty seeks summary judgment as to Counts I and II of its Complaint.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The burden to show that there are no genuine issues of material fact falls on the parties seeking summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This Court will consider the evidence in the light most favorable to the non-moving parties, drawing all justifiable inferences in their favor. *Id.* The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Factual issues preclude summary judgment in favor of Barbara Cox.

Barbara Cox contends that the Agreement Ohio Casualty seeks to enforce by way of this civil action is not enforceable. She denies signing it. In support of her argument she first points out that Mr. Henry did not receive the Indemnity Agreement from Ohio Casualty until it was sent to him by Ohio Casualty in a letter dated February 20, 2007, nineteen (19) days after the Indemnity Agreement was allegedly executed by her. This discrepancy, according to Mrs. Cox, belies the validity of the Agreement. Indeed, Mr. Henry cannot explain how he could notarize a document almost three weeks before it was in his possession. He testified about this about this obvious incongruity in his Deposition as follows:

> Q. [...] so you don't have any reason to doubt that the form would
> have been this form that you received on February 20th, 2007

7

[Exhibit D]?
A. That's dated February the 1st [...] I don't remember the circumstances behind it but with that dated February the 1st and this February the 20th, I don't see them being the same documents but I don't know that. I don't know. I don't remember.

[Deposition of David Henry, Docket No. 45, pg. 42, ln. 2-5, 10-15].

Mrs. Cox points out that it was not until February 27, 2007, that Mr. Henry forwarded the notarized Indemnity Agreement to Ohio Casualty. [Docket No. 49-8].

Moreover, Mrs. Cox denies ever meeting Mr. Henry, whose Notary Certificate reflects that she allegedly the Indemnity Agreement on February 1, 2007. [Affidavit of Barbara Cox, Docket No. 49-6, ¶ 14]. Nor does Mrs. Henry recall meeting with Barbara Cox. [Deposition of David Henry, Docket No. 45, pg. 29, ln. 18-29]. In fact, he testified that he does not know what she looks like. [*Id. p. 48, ln. 23-24*].

As for Jerry Catlett, who signed the Indemnity Agreement in the capacity of a witness, Mrs. Cox denies meeting him until after the death of her husband, David Cox, on May 31, 2011,14 more than four years after her purported execution of the Indemnity Agreement on February 1, 2007. [Affidavit of Barbara Cox, Docket No. 49-6, ¶ 12-13.] Her son, Ryan Cox, testified that he first introduced Mr. Catlett to his mother, at his father's visitation in June, 2011. Jerry

Catlett indicated at that time that he had never previously met Barbara Cox.[Affidavit of Ryan Cox, Docket No. 49-11, ¶ 5]. Nor does Jerry Catlett recall ever meeting Barbara Cox prior to David Cox's death on May 31, 2011. [Deposition of Jerry Catlett, Docket No. 44, p. 29, ln. 14-17]. Mrs. Cox argues that, based upon this testimony, it is clear that she never appeared before either Mr. Henry or Mr. Catlett and never signed the Agreement.

Further casting a shadow upon the validity of the Agreement, Mrs. Cox points out that shortly after the death of David Cox, Ohio Casualty's employee, James Rumpf, appeared at the offices of Griffith Catlett & Hampton Insurance to inquire as to the circumstances surrounding the execution of the Agreement. Rumpf showed Mr. Henry a copy of the Indemnity Agreement and asked him to sign a statement that indicated that he had "personally witnessed the signatures [...] at the time and date the document was signed by them on February 1, 2007". [Statement of David Henry, Docket No. 49-15]. Mr. Henry testified that he signed this statement based only upon the recognition of his own signature, and not upon some independent personal recollection of the alleged execution of the Indemnity Agreement. [Deposition of David Henry, Docket No. 45, pg. 55, ln. 9-23]. Immediately after meeting with Mr. Henry, Mr. Rumpf approached Jerry Catlett regarding a proposed affidavit about the execution of the Indemnity

Agreement. Mr. Catlett refused to sign a proposed affidavit that he had witnessed Barbara Cox sign the Indemnity Agreement. [Deposition of Jerry Catlett, Docket No. 44, pg. 35, ln. 17-19].

Mrs. Cox presents these facts as undisputed proof that she did not sign the Agreement and, thus, it is unenforceable. However, Ohio Casualty disputes them. It contends that if Mr. Catlett testified that it was definitely true that he would not have signed the Indemnity Agreement as a witness to the signature of Cox if he, in fact, did not witness a signature and Mrs. Henry does not recall any circumstances in which he would have notarized the signature of Mrs. Cox if she had not appeared before him personally to execute the document, she obviously must have signed the Agreement.

As for the discrepancy regarding the date on the Agreement, Ohio Casualty concedes that the date stated by Mr. Henry is not the correct date that he notarized Cox's signature but insists that Mrs. Cox makes much ado about nothing in this regard. It explains that the dating of the notary section to coincide with the stated effective date of an Indemnity Agreement is a common practice in the surety industry. [Affidavit of Paul Chapman, Docket No. 53-1, ¶3-4].

In addition, Ohio Casualty retained a handwriting expert, Steven A. Slyter,

to determine whether the signature on the Indemnity Agreement was, in fact, the signature of Barbara Cox. In conducting his analysis, Mr. Slyter examined the original Indemnity Agreement, a 1999 deed from the public record for the purchase of DBR's office in Winchester, Kentucky, and Mrs. Cox's application in June 2011 with Lincoln Financial Group for life insurance benefits resulting from David Cox's death. Upon comparing the "Barbara Cox" signatures on 1999 deed and the life insurance benefits application to the original Indemnity Agreement, Mr. Slyter stated:

> The subject signature [on the Indemnity Agreement] in this examination shows a lengthy, complex collection of pen-strokes forming the first name (Barbara). Examination of the original document shows this uninterrupted patter of strokes was produced at a natural, moderately fast pen-speed. The second name (Cox) also shows a complex pattern of quickly done pen-strokes but is, of course, a shorter set of strokes. These patterns of pen movements accurately repeat the patterns of movements defined by the exemplar signatures.

As a result, Mr. Slyter opined that all three signatures were of common authorship. [Docket No. 53-6].

Third Party Defendants Mr. Catlett and Mr. Henry also retained a handwriting expert, Jane Eakes. Ms. Eakes compared Mrs. Cox's signature from 12 documents to the signature on the Indemnity Agreement. Ms. Eakes concluded

that there are no significant structural differences between the signature on the Indemnity Agreement and the signatures on the 12 other documents, and that there were an abundance of similarities. As a result, Ms. Eakes opined that the Indemnity Agreement was executed by Cox. [Docket No. 53-7].

The parties have differing versions of what occurred in February 2007. It is clear to the Court that the record is replete with conflicting evidence which bears directly upon the ultimate issue in this case, to-wit, the validity of the Agreement. In considering motion for summary judgment, it is not for the Court to weigh the evidence and determine the truth of the matter. *See Browning v. Levy*, 283 F.3d 761. Rather, the Court determines whether there is a genuine issue for trial. *Id.* In this case, genuine issues of fact exist. As such, summary judgment is not appropriate.

Defendant also argues that the Agreement is unenforceable because Ohio Casualty materially increased the risk of the indemnitors. She points out that on January 31, 2007, DBR Engineering submitted an initial bond request from Ohio Casualty for a DBR e bid of approximately $2.25 to 2.5 million, which was turned down by Ohio Casualty on February 5, 2007 because the amount requested was too high. Yet, just 2 years later, on or around March 12, 2009, Ohio Casualty

approved a bond request submitted through Smith Manus Agency, Inc. for DBR Engineering's bid on a $1,600,000 contract for the University of Kentucky's Livestock Disease Center. The bid was successful and Ohio Casualty agreed to a bond in the amount of $1,929,000.29 Then again, on August 17, 2010, Ohio Casualty approved a bond request submitted via the Smith Manus Agency on DBR's bid for a $2,394,000 contract for the University of Kentucky's Pharmacy College, which bid was also successful. Hence, after rejecting David Cox's bond request in 2007 for only $2.25 to 2.5 million in bonding capacity for DBR Engineering for being too high, Ohio Casualty shortly thereafter approved an aggregate bidding amount of more than double that amount, totaling approximately $4,323,000. Mrs. Cox concludes that the "massive" increase in DBR's bonding capacity was due to Ohio Casualty's desire for premiums, with no regard for Mrs. Cox's personal exposure. Mrs. Cox argues that Ohio Casualty's conduct violated its fiduciary duty to her. Therefore, she contends that it should not be able to enforce the Agreement.

Ohio Casualty refutes this charge. It asserts that Mr. Chapman's decision to underwrite and approve the various bonds written for DBR, including those which are the subject matter of this action, was based on the financial strength and condition of DBR, its prior experience and its ability to perform the requested

bonded work. It specifically denies that he approved any bonds on behalf of DBR simply to generate premium income. [Affidavit of Paul Chapman, Docket No. 53-1, ¶8]. Ohio Casualty further insists that it was DBR who actively sought the bonds. So the increased risk, if any, was brought upon by DBR's own actions.

Again, factual issues prohibit this Court from granting summary judgment on this basis.

### C. Factual issues preclude summary judgment in favor of Ohio Casualty as to Counts I and II of the Complaint.

In performance of its bonded obligations for its Principal, Ohio Casualty has currently paid $803,486.66 in claims and expenses [Affidavit of James Rumpf, Docket No. 50-2]. Counts I and II of the Complaint relate to the Cox's duty to indemnify, reimburse, and exonerate Ohio Casualty for its losses and expenses resulting from the execution of its bonds. In seeking judgment as a matter of law as to these claims, Plaintiff argues that Mr. Cox executed the Agreement in the capacity of an individual indemnitor and that, by virtue of the clear terms of the agreement, he, through his estate, is obligated to indemnify Ohio Casualty. In support of its argument, Plaintiff states that the signature on the Agreement of David Cox was witnessed by Mr. Catlett and notarized by Mr. Henry. Plaintiff reiterates its argument that Mr. Catlett testified that he would not have signed the

Indemnity Agreement as a witness to the signature of Mr. Cox if he, in fact, did not witness his signature. [Deposition of Jerry Catlett, Docket No. 44, p. 42]. Plaintiff again points out that Mr. Henry testified that his signature appeared as the notary on the Agreement for the signature of Mr. Cox. [Deposition of David Henry, Docket No. 45, p. 61]. Mr. Henry does not recall any circumstances in which he would have notarized the signature of Mr. Cox if he had not appeared before him personally to execute the document. Therefore, according to Plaintiff, Mr. Cox must have appeared before Mr. Henry as he would not have notarized their signatures otherwise. [*Id.*]. Thus Plaintiff maintains, *ipso facto*, the Agreement was properly executed and indemnification is due.

Yet Plaintiff's argument obscures the fact that the validity of the agreement has been called into question. As Defendant points out in her own motion as well as in her response to Plaintiff's dispositive motion, although Mr. Cox purportedly signed the agreement on February 1, 2007, written correspondence between Ohio Casualty's representative and Mr. Henry Insurance document that the Agreement was not forwarded for signature until February 20, 2007. Moreover, Mr. Cox passed away prior to this lawsuit and is therefore unable to admit or deny whether the signature on the Agreement is in fact his, or provide any testimony or details regarding the circumstances of the purported

15

execution of the Agreement.

As discussed, *supra*, credibility judgments and weighing of the evidence are prohibited on a motion for summary judgment. *See Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789 (6th Cir. 2013). Yet, that is precisely what Plaintiff seeks, an adjudication of disputed facts by the undersigned. Again, that is for the jury.

IV. **CONCLUSION**

The parties' briefs demonstrate that factual issues abound in this case. Moreover, the facts in dispute bear directly upon the claims and defenses asserted by the parties. As such, summary judgment is inappropriate.

Accordingly, **IT IS HEREBY ORDERED** Defendant Barbara Cox's Motion for Summary Judgment [Docket No. 49] be **OVERRULED** and Plaintiff's Motion for Partial Summary Judgment [Docket No. 50] be **OVERRULED**.

This ____ day of March, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge