UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

THE OHIO CASUALTY INSURANCE
COMPANY,

      Plaintiff,

v.

BARBARA COX, Individually and in her
capacity as Administratrix for the Estate of
David Cox,

      Defendant/Third Party Plaintiff,

v.

JERRY CATLETT, DAVID HENRY, and
WESTERN SURETY COMPANY,

      Third Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 5:11-CV-334-HRW-REW


RECOMMENDED DISPOSITION

\*\*\* \*\*\* \*\*\* \*\*\*

     Third Party Defendants Jerry Catlett, David Henry, and Western Surety Company

filed a motion asking the Court to sanction Defendant/Third Party Plaintiff, Barbara Cox,

individually and in her capacity as Administratrix for the Estate of David Cox, for alleged

spoliation of evidence. DE #78 (TPDs' Motion for Sanctions). Approximately thirty days

later, Plaintiff, The Ohio Casualty Insurance Company, filed a similar motion. DE #80

(Plaintiff's Motion for Sanctions). Cox filed responses in opposition. DE #79 (Response

to TPDs' Motion); DE #82 (Response to Plaintiff's Motion). Movants replied. DE #81

(TPDs' Reply); DE #91 (Plaintiff's Reply). The District Judge referred the motions to the

undersigned for a recommended disposition. DE #98 (Referral Order). Both motions are ripe and ready for review.

For the reasons explained, the Court **RECOMMENDS** that the District Court **GRANT IN PART** the motions for sanctions. Specifically, and as set forth fully below, the Court recommends that the District Court impose a preclusive sanction for Defendant/Third Party Plaintiff's discovery conduct. Because Barbara Cox culpably destroyed journals of evidentiary significance in this case, the District Court should preclude all use of or reference to journals or journaling at the trial. Additionally, the Court recommends that the District Court award Third Party Defendants their reasonable expenses, including attorneys' fees, associated with the motion for sanctions. The Court recommends that the District Court deny the motions for sanctions to the extent they seek other or different relief.

## I.     Background

In October 2011, Ohio Casualty filed suit against Cox. DE #1 (Complaint). In its Complaint, Ohio Casualty alleges that David and Barbara Cox executed an Indemnity Agreement in favor of Ohio Casualty on or about February 1, 2007, in order to induce Ohio Casualty to execute surety bonds on behalf of David Cox, d/b/a DBR Engineering. *Id.* at ¶ 6. According to Ohio Casualty, following execution of and in reliance on the Indemnity Agreement, Ohio Casualty, as surety, executed payment and performance bonds for DBR, as principal. *Id.* at ¶ 8. Ohio Casualty claims that it has since paid claims under the bonds, but Cox has not indemnified Ohio Casualty for its losses pursuant to the terms of the Indemnity Agreement. *Id.* at ¶¶ 9-10. More specifically, Ohio Casualty alleges that it has incurred losses of over $900,000.00 under the bonds, and that Cox,

individually and in her capacity as Administratrix of the Estate of David Cox (who died in May 2011), is liable for the entirety of the loss amount. *See id.* at ¶¶ 11-24.

In her Answer to Ohio Casualty's Complaint, Cox asserted, in relevant part, that she did not individually sign the subject Indemnity Agreement. DE #6 (Answer), at ¶ 5. Indeed, Cox specifically denies that the signature on page four of the Agreement is her signature. *Id.* As support for that denial, during discovery and dispositive motion practice, Cox has cited to her "meticulously-detailed daily journal," noting that her journal entry for February 1, 2007, gives no indication that she executed any such document. *See* DE #49-1 (Memorandum in Support of Motion for Summary Judgment), at 5. At deposition, she relied significantly on her journal as the basis for her memory of the day. *See* DE #51-2 (Cox Depo.), at 111. She claimed to write in it "every day," *id.* at 99-100, and specifically testified that the journal would reflect every document of significance that she signed. *Id.* at 102.

Contemporaneously with the filing of her Answer, Cox filed a Third Party Complaint against Catlett, Henry, and Western Surety Company. *See* DE #5 (Third Party Complaint). In her Third Party Complaint, Cox notes that Catlett nominally witnessed the signing of the Indemnity Agreement and that Henry notarized the document. *Id.* at 2. Cox contends that her signature on the Indemnity Agreement is a forgery. *Id.* Cox therefore alleges that Catlett and Henry negligently exercised their duties as witness and notary, respectively, exposing Cox to damages, including the amount sought in Plaintiff's Complaint.[1] *Id.*

---

[1] According to Cox, Kentucky requires public notaries to post bond for any violations in the administration of their duties. *See* DE #5, at 2. Cox claims that Western Surety Company posted this bond for Henry in the amount of $500.00. *Id.* at 2, 4. Cox thus

During discovery, Cox produced a portion of her journal entries, including her journal entry for February 1, 2007. *See* DE #51-2 (Cox Depo.), at 98. At Cox's deposition on January 10, 2013, counsel for Third Party Defendants inquired about her journaling. Third Party Defendants elicited testimony that Cox started journaling approximately seventeen years ago, that she would journal daily, and that she still had her old journals. *Id.* at 99-100; *see id.* at 99 ("Q: And do you still have those old journals? A: Yes."). When asked specifically if she had her journal from 1999, however, Cox qualified, "I might have." *Id.* at 103. Cox also testified that every time she signed a document, she would enter it in her journal. *Id.* at 102 ("Q: Would you enter into your journal every time you would sign a document? A: Yes. Q: Every time? A: Yes. That would [be] important to me, yes."). Again, however, when asked specifically whether there would be an entry in journal about signing a particular mortgage in 2003, Cox qualified her answer, stating, "There might be." *Id.* at 103. Cox stated that she would "[p]ossibly" make her old journals available for lawyer review. *Id.* at 99.

Following Cox's January 10 deposition, on January 28, 2013, Third Party Defendants served a request for production that asked Cox to produce all of her personal journals from January 1, 1981, to present. *See* DE #78-4 (Response to TPDs' RFP). Cox ignored the request for months and then, when prompted, served a formal objection to the request for production on May 3, 2013. *See id.* Specifically, Cox objected as follows:

> All requests for documentation were to be served thirty (30) days prior to the close of discovery. Therefore, the document requests seek information beyond the close of fact discovery. The document request also seeks thousands of pages of documentation containing intimate details of Ms. Cox's life. Ms. Cox previously produced journal entries for the relevant time periods. The approximate size of the request would exceed 11,000

alleges that Western Surety Company is liable to her in the amount of the notary bond. *Id.* at 7.

pages of documents. Therefore, Ms. Cox objects to this request as being irrelevant, overbroad and unduly burdensome, not calculated to lead to the discovery of admissible evidence, and requested beyond the permissible time period.

*Id.* Discovery in the case closed on January 31, 2013. *See* DE #38 (Amended Scheduling Order), at ¶ 4.

In compliance with the scheduling order (*see* DE #38, at ¶ 5), Cox and Third Party Defendants sought a telephonic conference with the undersigned to address the discovery impasse. *See* DE #66 (Order Scheduling Teleconf.). During the May 22, 2013 conference,[2] the Court noted some ambiguity in the scheduling order regarding operation of the discovery deadline. DE #77 (Transcript), at 11-12. In light of that ambiguity, and further in light of Third Party Defendants' counsel's representation that he did not learn about the scope of Cox's journaling until her January 10 deposition, the Court reached the merits of the dispute. *See id.* at 12. Although the Court found the temporal scope of Third Party Defendants' request for production overbroad, the Court ruled a portion of the journals discoverable, stating as follows:

> Because Cox has made the argument that she did not sign the indemnity agreement, based in part on the fact that she did not make a record of the signing in her journal, the Court **FINDS** that Third Party Defendants are entitled to a portion of the journal entries they seek. Specifically, Cox must produce three (3) years of journal entries, representing the eighteen (18) months preceding and the eighteen (18) months following February 1, 2007, the date of alleged execution of the indemnity agreement. Additionally, Cox must produce journal entries for five dates, outside that three-year window, selected by Third Party Defendants and representing dates on which Cox purportedly signed other documents, such as wills or mortgage agreements. Cox may either produce the records to Third Party Defendants or provide the journals for inspection and copying at a location agreed upon by the parties. The production must be complete **on or before June 18, 2013**.

---

[2] Ohio Casualty did not participate in the conference call or the origination or presentation of the issues. *See* DE #70.

DE #70 (Minute Entry Order). Thus, the Court found the journal entries generally relevant to Cox's defense to Ohio Casualty's claims and to Cox's claims in her Third Party Complaint. *See* Fed. R. Civ. P. 26(b)(1). The Court further found that narrowing the scope of the request to three years of journal entries, plus an additional five targeted dates selected by Third Party Defendants, eliminated any undue burden on Cox relating to production. *See* DE #77, at 14 ("Now, that seems to me to – dramatically eliminate the burden of production and to give – to give the third party defendants a fair chance to test, sort of, the validity of the recordation defense."). Simply put, Cox claimed the journal would have reflected that she signed the agreement and indeed that she journaled all document executions. As such, the other litigants deserved the opportunity to test the integrity of these positions by seeing the journal over a significant course of time and on specific dates when Cox admitted signing other, unrelated, papers of legal importance.

To address any privacy concerns associated with the production of Cox's personal journals, the Court incorporated a protective order into its ruling. *See* DE #70. The Court limited use of any journal entries produced to the instant case and directed the parties to "cooperate and allow Cox reasonably to redact information of a personal nature entirely unrelated to the instant lawsuit or the Court's relevancy analysis." *Id.* Additionally, the Court ordered no disclosure of "journal content beyond the parties, counsel, staff, and experts," though the Court did not restrict inclusion in a case filing. *Id.*

Under the discovery-dispute protocol, the Court's decision resulting from the telephonic conference constituted a "provisional ruling" based on a limited record. *See* DE #70. The Court granted either party leave to file a formal motion on the subject matter addressed, noting that, in the absence of a formal motion, the provisional ruling

resolved the dispute. *Id.* No party objected to the provisional ruling or otherwise filed a formal motion on the journal access dispute until Third Party Defendants filed their motion for sanctions on July 22, 2013.

Filings associated with the motions for sanctions illuminate the troubling events in the interim. Third Party Defendants identified the five additional journal entry dates permitted by the Court's provisional ruling on May 28, 2013. *See* DE #78-9. By agreement, the parties extended by fourteen days the deadline for Cox's production of the journal entries. *See* DE #78-10; DE #79-2. According to Third Party Defendants, counsel for Cox requested this extension on the day of the original production deadline. On July 2, 2013, however, the parties' agreed-upon deadline for production, counsel for Cox sent a letter to counsel for Third Party Defendants indicating that Cox had discarded the journals. *See* DE #78-12. Per her counsel:

> I am writing to you regarding the journals of Barbara Cox requested in discovery. Ms. Cox informs us that the journals recently ordered by Magistrate Judge Wier to be produced are not currently in her "possession, custody, or control." It is our understanding that the journals requested were thrown away by Ms. Cox.
>
> We understand that you may want to address this issue with the Court. To that extent, I continue to reserve the objections previously asserted regarding the production of these journals. In addition, it is our understanding that these journals were destroyed prior to their [sic] being any obligation upon Ms. Cox to produce the journals requested.

*Id.* Counsel for Third Party Defendants, with warranted urgency and incredulity, immediately reacted to the letter via email, asking

> - when were the journals thrown away/destroyed?
> - why were the journals thrown away/destroyed?
> - who was involved in the decision to throw away/destroy the journals?
> - were any journals kept? if so, which ones, and why?
> - how exactly were the journals destroyed?

- when did your office become aware that the journals were thrown away/destroyed?

DE #78-13. On July 16, 2013, counsel for Cox responded,

> It is my understanding that all of Ms. Cox's journals were thrown away by Ms. Cox soon after the production of the original journal. My records show that the original journal was produced in response to the plaintiff's first set of discovery requests on or around July 23, 2012. The journals were placed in the trash and picked up in the ordinary routine of garbage pick up at her residence. Ms. Cox made the decision to throw away the journals because she was throwing away items that caused her painful memories in light of her husband's passing.

DE #78-14. Third Party Defendants and Ohio Casualty then filed the motions for sanctions pending before the Court.

Third Party Defendants' motion asks the Court to sanction Cox for her destruction of relevant evidence and failure to comply with the Court's May 2013 Order requiring her to produce certain portions of her journals. DE #78-2, at 1. They argue that Cox's "intentional destruction" of evidence relevant and necessary to the defenses of Henry, Catlett, and Western Surety Company, warrants imposition of the "ultimate" spoliation sanction of dismissal of Cox's claims. *Id.* at 6-7. Third Party Defendants further argue that dismissal is an appropriate sanction for Defendant's violation of the Court's order to produce the journals in discovery. *Id.* at 13.[3]

Ohio Casualty similarly seeks sanctions, arguing that Cox's spoliation has substantially impaired its ability to challenge Cox's recordation defense or otherwise impeach her. DE #80-1, at 2. Ohio Casualty, however, seeks slightly different relief. First, Ohio Casualty asks the Court to strike Cox's Answer to Ohio Casualty's Complaint and enter a default judgment in favor of Ohio Casualty, alleging that the journal entries

---

[3] Movants alternatively ask for lesser relief, such as an adverse inference instruction. DE #78-2, at 12 n.8.

were the "sole basis" for Cox's defense, set forth in the Answer, that she did not execute the Indemnity Agreement. *Id.* at 7. Second, and alternatively, Ohio Casualty asks the Court to designate as conclusively established that Cox signed the Indemnity Agreement. *Id.* at 9-10. Third, and again alternatively, Ohio Casualty asks the Court to prohibit Cox from opposing Ohio Casualty's indemnity and exoneration claims by means of the journals. *Id.* at 12.

## II.     Analysis

Spoliation is the "destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). A party's spoliation of evidence is sanctionable, and a federal court in the Sixth Circuit "appl[ies] federal law for spoliation sanctions." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Under Sixth Circuit law, a party seeking an adverse inference instruction based on destruction of evidence

> must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). The Sixth Circuit "has implied that these same elements are applied in evaluating spoliation sanctions[] other than requests for adverse inferences." *Gilley v. Eli Lilly and Co.*, 2013 WL 1701066, at *5 (E.D. Tenn. Apr. 2, 2013) (citing *Beaven*, 622 F.3d at 554). Recognizing that "failures to produce relevant evidence fall along a continuum of fault— ranging from innocence through the degrees of negligence to intentionality," the Sixth

Circuit has noted that "the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Adkins*, 554 F.3d at 652-53 (internal citation and quotation marks omitted). Thus, a district court has discretion in fashioning an appropriate spoliation remedy, "including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence."[4] *Id.* at

---

[4] Federal Rule of Civil Procedure 37 grants courts authority to sanction a party's failure to obey a discovery order. Third Party Defendants allege Cox either threw away her journals after the Court issued its May 2013 provisional ruling or never intended to comply with the ruling. *See* DE #78-2, at 13-15. Such conduct would be sanctionable under Rule 37. Ultimately, however, the Court evaluates both motions for sanctions under the spoliation framework, as the essential claim in each is that Cox destroyed relevant evidence. Cox's failure to produce the journals in compliance with the Court's ruling is secondary, a result of the alleged spoliation. If Cox destroyed the papers before the May discovery issues, she may be guilty of spoliation but would not conceptually have violated the production order.

Still, because the Court has broad discretion in fashioning a sanction for evidence destruction, the Court is mindful of the range of sanctions set forth in Rule 37. Under the rule, sanctions may include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* at 37(b)(2)(A)(i)-(vii). Of these, dismissal is the sanction of "last resort." *Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). Dismissal "should

653 (citation omitted). The range of remedial options includes suppression or preclusion of evidence and an award of appropriate attorney fees. *See, e.g.*, *Zarwasch-Weiss v. SKF Economos USA, Inc.*, 2011 WL 4628745, at *7 (N.D. Ohio 2011) (citing *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 402 F. App'x 990, 2010 WL 4643282, at *2 (6th Cir. Nov. 17, 2010); *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 273 (W.D. Pa. 2012); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009). Generally, "a proper spoliation sanction should serve both fairness and punitive functions." *Id.* at 652.

Ohio Casualty and Third Party Defendants argue that Cox had an obligation to preserve her journals in November 2011, the month Cox repudiated her signature on the Indemnity Agreement in her Answer and Third Party Complaint in this lawsuit. DE #80-1, at 5-6; DE #78-2, at 8-9; *see also* DE #78-2, at 9 n. 4 (stating that Cox first repudiated her signature in her November 16, 2011 Estate disallowance of the claim Ohio Casualty filed against David Cox's estate). Cox argues that any duty to preserve the journals attached at the earliest on January 10, 2013, when Third Party Defendants asked questions about the journals during Cox's deposition.[5] DE #79, at 4.

---

be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." *Id.*

[5] Cox also argues that the motions for sanctions themselves are dilatory and untimely, because they were filed after the discovery and dispositive motions deadlines. *See* DE #79, at 5. The Court rejects this argument. Ohio Casualty and Third Party Defendants filed their motions shortly after learning that Cox had thrown the journals away and therefore that Cox would not be producing additional journals under the Court's provisional order. Indeed, Third Party Defendants filed their motion just twenty days after learning Cox had discarded the journals, and just six days after receiving an email from Cox's counsel providing an explanation for the evidence destruction, *see* DE #78-14. Based on the timing of the discovery dispute, the Court's provisional ruling, and the date required for production of the journal entries, neither motion for sanctions was untimely. The Court notes that Cox's counsel agreed that the Third Party Defendants had preserved the issue and yet still make an ineffectual timing argument.

A party has an obligation to preserve "all evidence that it knows or should know is relevant to any present or future litigation." *Clark Const. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005); *see also Beaven*, 622 F.3d at 543 ("An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation.") (citation and internal quotation marks omitted). Under the federal rules, "[t]he scope of discovery . . . is traditionally quite broad." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[,]" and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Here, the Court finds that Cox had an obligation to preserve her journals when she knew she would be using a journal entry (or absence of entry) to support her contention, made as a defense to Ohio Casualty's complaint and a claim in her own complaint against Third Party Defendants, that she did not sign the Indemnity Agreement at issue in this litigation. At that time, Cox *and her counsel* knew or should have known that Ohio Casualty and/or Third Party Defendants would want to examine at least a portion of Cox's journals. *See Clark Const. Group*, 229 F.R.D. at 136-37 (explaining that the decision regarding what is potentially relevant should not be left to a lay person's "sole discretion[,]" as "what might be potentially relevant to a person trained in the law might not be relevant to a lay person"). Cox and her counsel may have believed that they had sound arguments supporting a position that many, if not most, of the journals were not subject to discovery. And, in fact, after Third Party Defendants requested the entirety of

Cox's journal collection, the Court significantly narrowed the scope of required production. But, especially given the broad scope of discovery under Rule 26 and Sixth Circuit law, Cox's reliance on a journal entry to support her claims triggered a duty to preserve all journals then in her possession. At that time, it was "reasonably foreseeable to the spoliating party that the evidence would be subject to discovery." *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1061 (W.D. Tenn. 2009) (citation omitted).

Neither Cox's Answer nor her Third Party Complaint specifically references her journals or any journal entry; thus, it is not clear that her duty to preserve attached in November 2011. However, Cox certainly knew she would be relying on her journals when she produced one physical journal to opposing counsel in July 2012. Cox's counsel has represented that Cox threw away all journals responsive to the Court's provisional ruling "soon after the production of the original journal." DE #78-14. Therefore, Cox threw away evidence relevant to the instant litigation after she had an obligation to preserve it.

The logical relevancy of the journals, as a confirmatory or testing source, is obvious. Cox denies she signed the Indemnity Agreement and points to the journals— "Had I executed the Agreement of Indemnity . . . my journal would have reflected this information." DE #49-6, at ¶ 10. She testified that she journaled every day for seventeen years and would have recorded execution of any legal document. DE #51-2 (Cox Depo.), at 102. Per Cox, absence of journal reference to signature thus acts as proof of no signature. As argued, "Cox's daily journal would include at least a passing reference to the formal execution of an important legal document on which her alleged signature was both witnessed and notarized[.]" DE #49-1 (Summary Judgment Memo.), at 12. The

accuracy and weight of the evidence hinge on the consistency of Cox's habit. Thus, the journals over time, specifically including entries on comparative dates when Cox signed other documents, such as wills or mortgages, plainly are relevant; Cox should have preserved them as soon as she determined to rely on the journal recordation argument.

Having determined that Cox had an obligation to preserve the journals, the Court now turns to the second prong of the spoliation sanction inquiry, which asks whether Cox destroyed the evidence "with a culpable state of mind." *See Beaven*, 622 F.3d at 553. Cox contends that, in the vicinity of July 2012, after voluntarily producing one journal to the opposing parties in this matter, she threw the remaining journals away along with other items that were painful reminders of life with her late husband. DE #79, at 6. She argues that her conduct constituted nothing more than mere negligence, if that. *Id.*

The inquiry into a party's degree of fault is a "fact-intensive" one. *See id.* at 554; *Adkins*, 554 F.3d at 653. Further, the veracity of Cox's stated explanation for the evidence destruction is "an issue of credibility." *Beaven*, 622 F.3d at 554 (citation and internal quotation marks omitted). As argued by Ohio Casualty and Third Party Plaintiffs, a variety of facts in the record render suspect Cox's explanation for the timing and catalyst for destruction of her journals.[6]

First, during her deposition, Cox did not state that she had thrown journals away. Instead, when asked if she still had her "old journals," Cox unequivocally answered, "Yes." DE #51-2, at 99. Though she later qualified her response, stating that she "might have" her 1999 journal, *see id.* at 103, Cox certainly did not express or imply that there was a possibility she had thrown away *all* her journals, as later represented by Cox's

---

[6] The Court is surprised at the absence of an affidavit from Cox regarding the details of destruction. No party has sought an evidentiary hearing, so the Court will proceed on the record before it.

counsel. *See* DE #78-14 ("It is my understanding that all of Ms. Cox's journals were thrown away by Ms. Cox soon after the production of the original journal.").

Then, in Cox's formal objection to Third Party Defendants' request for production, Cox did not object on the ground that she no longer had the journals. Instead, she objected based on the timing of the request, the request's alleged overbreadth and irrelevance, and the purported burden of production. DE #78-4. Similarly, in the telephonic conference with the undersigned regarding the discovery dispute and in pre-call preparation, Cox's counsel never represented that Cox could not produce or no longer possessed some or all of the journals. Following the conference, Cox asked opposing counsel for a two-week extension of time to produce the journals in compliance with the Court's provisional ruling; Cox only revealed to opposing counsel that the journals were no longer in her possession, custody, or control, on the last day of the extended deadline.

The record reflects that Cox expressed reticence about producing additional journals. During her deposition, when asked if she would make her old journals available to her counsel for Third Party Defendants to review, Cox responded, "Possibly." DE #51-2, at 99. Additionally, in a letter submitted to the Court in advance of the May 2013 telephonic conference regarding Third Party Defendants' request for production, Cox's counsel stated,

> These journal entries are also protectable because production would be embarrassing and an annoyance. These journals contain the intimate and personal details of Barbara Cox's life. *Ms. Cox does not desire to reveal any more about her personal life as* [sic] *has already been disclosed in this lawsuit.*

DE #78-7 (emphasis added). During the conference itself, Cox's counsel indicated that Cox was "not happy that we felt compelled to produce" the journal voluntarily produced to opposing parties in July 2012. DE #77, at 10.

Additionally, the Court notes that David Cox, Barbara Cox's late husband, passed away in May 2011. *See* DE #51-1, at 9. In accordance with the Court's provisional ruling, Third Party Defendants identified five specific journal entries for production, including the entries for: October 15, 1999; March 18, 2003; June 6, 2011; June 22, 2011; and October 9, 2011. DE #78-9. Three of these five dates fell after David Cox's death. Cox's contention that she threw away journals that were painful reminders of her life with her late husband does not explain why she threw away journals and journal entries that post-dated his passing.

In sum, in light of Cox's deposition responses, Cox's formal objection to Third Party Defendants' request for production of her journals, the representations made by Cox's counsel during the course of the journal dispute, and the temporal scope of the missing journals, the Court finds Cox's explanation for discarding the journals highly suspect and indeed not credible. The Court doubts that Cox threw away the journals both when and why she claims.

Several aspects of the story are dubious. That counsel never once hinted that the journals were gone, despite litigating hard over discoverability, tells the Court that counsel believed the journals to remain in Cox's possession during May of 2013. Rule 26(g) required counsel to make reasonable inquiry in advance of responding to the Rule 34 request, and the formal response—which estimated 11,000 pages in a potential production—did not in any way communicate that the journals were gone. Further, if Cox

had actually discarded the journals just after July of 2012, she would not have testified as she did about the journals in January of 2013, strongly indicating she still had old journals and in no way hinting she had thrown any away. Parties do not typically fight to protect against production of nonexistent evidence, and the Court suspects that, once Cox knew her journals were subject to broader discovery, she made the decision to throw away the records. This may have been because of content she considered private, rather than a desire to eliminate relevant proof, but the destruction renders indeterminable the motive. By intentionally and volitionally throwing the evidence away, at a time when the materials had inarguable evidentiary worth, Cox acted culpably as defined by the spoliation rubric. *See Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) (defining culpable as "knowingly or negligently"); *Beaven*, 622 F.3d at 554 (treating as culpable destruction that was done "knowingly, even if without intent to breach a duty to preserve") (internal quotation marks and alterations omitted).

The third and final prong of the spoliation inquiry asks whether the destroyed evidence was relevant to the claim or defense of the party seeking sanctions such that a reasonable trier of fact could find that it would support that claim or defense. *See Beaven*, 622 F.3d at 553. Undeniably, if Ohio Casualty had access to all the journal entries the Court ordered Cox to produce and those entries showed that Cox had not recorded other significant events and/or the signing of other legal documents, Ohio Casualty could use that evidence to strengthen its case against Cox, and Third Party Defendants could use the same evidence to strengthen their defense(s) to Cox's Third Party Complaint. A reasonable trier of fact could surely find that such evidence supports Movants' claims and defenses. More accurately, a reasonable trier of fact could find that such evidence

counters Cox's defense to Ohio Casualty's Complaint and Cox's claims against Third Party Defendant. If other dates showed no practice or habit of recordation, or if the longer sample showed inconsistencies in Cox's described practices, the proof could contradict the reliability, accuracy, and probativeness of the February 2007 journaling.

Of course, there is a chance the journal entries would instead support Cox's own case. But, "the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss[,]" *BancorpSouth Bank*, 643 F. Supp. 2d at 1061-62 (quotation omitted), especially where, as here, the Court finds it likely that the spoliating party's "actions were more than negligent." *Id.* at 1062. Accordingly, the Court finds that Movants have established that the destroyed evidence was relevant within the meaning of the spoliation sanctions test.

Movants seek judgment in their favor, or relief that inevitably leads to judgment in their favor, for Cox's disposal of the journals. Dismissal or "[a] grant of judgment in favor of a prejudiced party . . . is a 'drastic remedy[]' [that] 'should be imposed only in extreme circumstances.'" *BancorpSouth Bank*, 643 F. Supp. 2d at 1060 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). In determining whether to impose such an extreme sanction, "a court should consider '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'" *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

The Court has already discussed Cox's degree of fault. As to the degree of prejudice, the Court finds that Movants somewhat overstate the harm caused by the journals' destruction. Ohio Casualty and Third Party Defendants essentially argue that Cox wholly relies on her journal in support of the claim that she did not sign the Indemnity Agreement, and that Cox's disposal of the journals deprives them of the ability to contest and impeach that claim (or rather, with respect to Ohio Casualty, that defense). A review of Cox's motion for summary judgment on Ohio Casualty's claims, however, reveals that Cox's journal is only part of the evidence she utilizes in denying execution of the Indemnity Agreement. *See* DE #49-1 at 11-13. For example, Cox also points to evidence suggesting that the unsigned Indemnity Agreement was not in the possession of Henry, the notary, until February 20, 2007, nineteen days after Cox purportedly signed it. *See id.* at 11, 13. Additionally, Cox makes the alternative and legally distinct argument that even if she did sign the Indemnity Agreement, the Agreement is unenforceable because Ohio Casualty materially increased the risk of the indemnitors Cox. *Id.* at 13-17.

"A spoliation sanction should be 'molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine' and 'designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position her would have been in absent the wrongful destruction of evidence by the opposing party.'" *BancorpSouth Bank*, 643 F. Supp. 2d at 1059-60 (quoting *West*, 167 F.3d at 779). Keeping these objectives in mind, and having considered all possible sanctions, the Court recommends that the District Court sanction Cox for evidence spoliation by precluding Cox from in any way using, referencing, or relying on any journals or journaling proof in

the case. She focuses her signature denial proof on lack of recordation in her journal, but Cox's own actions block the ability of other parties and the fact-finder to test the reliability of the proof. By denying Cox the chance to rely on the existing journals, or her journaling habit, the Court would completely eliminate the unfairness introduced by destruction of the remaining journal record. Defendant can still deny that she signed the agreement; she simply would not be able to cite to journaling to substantiate or otherwise support the denial.

This is a remedy short of dismissal or an award of judgment against Cox and serves the full purposes of an adequate spoliation sanction without imposing the ultimate penalty. An adverse instruction would not suffice, in the Court's view, because Cox then, despite clear culpability and borderline deceit, would retain her full and primary evidentiary argument. Allowing or even requiring a jury to draw an adverse inference on the missing records would inadequately spare the other parties from prejudice and would inadequately punish the litigation choice Cox made. This recommended remedy is somewhere on the sanction continuum between a non-rebuttable inference and outright merits finding; it lets Cox continue in her factual and legal posture and simply excises the part of the case now forever tainted by the impropriety of spoliation.[7] Preclusion serves both fairness and punishment, accounts for the degree of fault perceived, and levels the evidentiary playing field in the case, but it also goes no further than necessary.

In addition to the adverse inference instruction, the Court recommends that the District Court sanction Cox by awarding Third Party Defendants their reasonable

---

[7] Judge Wilhoit did not rely in any way on the journal argument in resolving the summary judgment motions. DE #99. This supports the Court's view that simply dropping the issue of the journals and journaling eliminates all unfair prejudice and keeps the parties in evidentiary balance, all without over-penalizing Cox via a judgment or adverse merits ruling.

expenses, including attorneys' fees, associated with their motion for sanctions. Third Party Defendants requested recovery of expenses and fees in their motion,[8] DE #78-2, at 15 n. 11, and an award of attorneys' fees is an appropriate sanction for spoliation. *See Miller v. Home Depot USA, Inc.*, 2010 WL 373860, at *1 (M.D. Tenn. Jan. 28, 2010) (citing *Clark Const. Group*, 229 F.R.D. at 139). Under the circumstances of this case, an award of attorneys' fees to Third Party Defendants is particularly appropriate. The actions of Cox, whether just after July 2012 or between January and May 2013, caused the need for the spoliation-sanction effort by Third-Party Defendants.[9] The culpability rationale and lack of candor by Cox strongly warrant a fee shift in this context. Not doing so would, again, understate the significance of the conduct and underserve the deterrent and punitive effects of a proper spoliation remedy.

### III. Recommendation

Accordingly, for the reasons explained, the Court **RECOMMENDS** that the District Court **GRANT IN PART** the motions (DE ##78 and 80) of Ohio Casualty and Third Party Defendants. Specifically, the Court **RECOMMENDS** that the District Court grant the motions to the extent they seek sanctions, and the Court **RECOMMENDS** that the District Court impose the preclusive sanction set forth above. Additionally, the Court **RECOMMENDS** that the District Court award Third Party Defendants their reasonable expenses, including attorneys' fees, associated with the motion for sanctions. To facilitate

---

[8] Ohio Casualty does not make a similar request.

[9] Again, the Court notes that Ohio Casualty did not participate in the telephonic conference. Third Party Defendants clearly took the lead on the dispute over production of the journals and the resulting spoliation litigation. Ohio Casualty filed its motion for sanctions after Third Party Defendants and adopted Third Party Defendants' statement of the relevant facts. DE #80-1, at 1. Accordingly, even if Ohio Casualty asked for an award of expenses and fees, the Court would not be inclined to grant the request. Plaintiff gets the benefit of the ruling because it also would and should have received journal access, but Ohio Casualty was a bystander in the process of pursuing and litigating the topic.

the District Court's review of this recommendation, the Court **DIRECTS** Third Party Defendants to file a detailed fee request and supporting affidavit, **within fourteen (14) days of the date the District Judge finally resolves the motions**, that sets forth their fees and costs associated with evidence spoliation litigation in this matter. Cox can respond to the fee application on the normal motion briefing schedule. The Court **RECOMMENDS** that the District Court **DENY IN PART** both motions for sanctions (DE ##78 and 80) to the extent they seek dismissal or relief other than the sanctions recommended herein.

*  *  *  *  *  *  *  *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.[10] *See also* Fed. R. Civ. P. 72(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 20th day of June, 2014.

---

[10] Some courts have concluded that "the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." *Bell-Flowers v. Progressive Ins. Co.*, 2005 WL 3434818, at *2 n.1 (W.D. Tenn. Dec. 13, 2005) (citing cases); *see also Provience v. City of Detroit*, 2011 WL 7445088, at *2 n.1 (E.D. Mich. Nov. 28, 2011). Here, however, the Court elects to treat the motions for sanctions as dispositive because Movants seek dispositive relief. *See Provience*, 2011 WL 7445088, at *2 n.1. Issuing a recommendation pursuant to § 636(b)(1)(B) is the safer course, as it preserves the parties' right to *de novo* review.

 Signed By:

*Robert E. Wier*

United States Magistrate Judge

23