UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

THE OHIO CASUALTY INSURANCE COMPANY,

Plaintiff,

v.

BARBARA COX, Individually and as Administratrix for the Estate of David Cox,

Defendant/Third Party Plaintiff,

v.

JERRY CATLETT, DAVID HENRY, and WESTERN SURETY COMPANY,

Third Party Defendants.

No. 5:11-CV-334-HRW-REW

RECOMMENDED DISPOSITION

*** *** *** ***

Judge Wilhoit referred this case to the undersigned "to schedule and conduct the jury trial, for rulings on motions in limine and for a report and recommendation on any dispositive motions." DE #119. In this Recommended Disposition, the Court addresses the pending dispositive motions and fee request (prompted by DE #102). The Court **RECOMMENDS** that the District Court **DENY** DE ##118 and 125, **GRANT** DE ##117, 120, 121, 122, and **ORDER** the fee award to the Third-Party Defendants to be **$17,212.50**.

All parties are thoroughly familiar with the facts and allegations of this case. David Cox ("Mr. Cox") operated electrical contractor DBR Engineering as sole proprietor. Barbara Cox ("Cox") was his wife. On January 31, 2007, Mr. Cox requested bonding from Ohio Casualty through David Henry ("Henry") at Griffith Catlett & Hampton Insurance ("GCH") for two

potential DBR Engineering jobs. Ohio Casualty denied the first request, *see* DE #49-4 (2/5/07 Henry email), but it later (on February 20, 2007) approved the second. On that date, the evidence suggests that Ohio Casualty, through its underwriter Paul Chapman ("Chapman"), sent a letter to Henry with an Indemnity Agreement for execution. DE #49-5.

Mr. Cox d/b/a DBR Engineering, Mr. Cox individually, and Cox individually purportedly executed (via signature) an Indemnity Agreement to hold Ohio Casualty harmless from any loss resulting from bonding as surety. Their alleged signatures, along with those of a witness (Jerry Catlett ("Catlett"), who worked at GCH) and a notary (Henry), facially appear on the Agreement. The notary certifications that accompany the Coxes' signatures are dated February 1, 2007. Cox now denies signing the Agreement. Cox denies ever meeting Henry and denies meeting Catlett until after the death of Mr. Cox. DE ##49-6, 51-1 (Cox Depo.), at 21, 51-2 (Cox Depo.), at 65; *see also* DE ##49-11 (Ryan Cox Affidavit), 49-12 (Bryan Cox Affidavit). Henry, on the other hand, certified that he "personally witnessed" the subject signatures "at the time and date the document was signed . . . on February 1, 2007 and [that he] placed [his] notary signature to their signing of the document at that time." DE #22-5 (Henry Affidavit); *but see* DE #53-1 (Chapman Affidavit), at 32-33 (describing the "common practice in the surety industry for a notary to date the notary section the effective date of the Indemnity Agreement so that the dates coincide" and testifying that "[t]hat fact and practice is what occurred with the Indemnity Agreement at issue in this action."). Henry swore to his statement, though, not based on his independent recollection of the events, but rather only upon recognition of his own signature and a description of his practice as a notary. DE #45 (Henry Depo.), at 14, 16 (Depo. pp. 55, 61). Catlett refused to sign a similar affidavit for lack of recollection. DE #44 (Catlett Depo.), at 9-10 (Depo. pp. 35-37). Catlett did

recognize his signature and testify he only would have signed if he did act as witness. *Id.* at 11 (Depo. p. 42).

Later, and based partly on this Agreement, Ohio Casualty, ostensibly as surety for David Cox d/b/a DBR Engineering, executed bonds through Chapman on DBR's behalf related to various construction-related projects. The bonds carried dates April 22, 2009 (Messer Construction—UK College of Pharmacy), and September 27, 2010 (Congleton-Hacker—UK Livestock Disease Diagnostic Center).[1] *See* DE #1-2. [Chapman initially worked with GCH, and later with Smith-Manus Insurance, regarding DBR's financial health and work progress. *See, e.g.*, DE ##22-3; 52-1, at 12-13.] DBR subsequently defaulted in its performance under the bonded contracts. Ohio Casualty has made payments based on those incidents of default, producing this dispute.

Mr. Cox died on May 31, 2011. The Montgomery Probate Court appointed Cox Administratrix of his estate on June 6, 2011. Based on DBR's defaults, Ohio Casualty filed a Proof of Claim on the Estate and demanded Cox individually honor the Indemnity Agreement through payment of Ohio Casualty's claims and expenses. Cox—individually and as Administratrix—refused to pay. This litigation followed.[2] Ohio Casualty seeks over

---

[1] The (at least tentative, on February 20, 2007) Judy Construction bond does not further appear as a subject of the current litigation. *See, e.g.*, DE ##52-1 (Chapman Affidavit) ("Ohio Casualty approved on February 20, 2007 a final bond in the amount of $314,099.00[.]"); 49-5 (Chapman Letter) ("[W]e are willing to support the $314,099 contract with Judy Construction[.]"); 45 (Henry Depo.), at 11 (Depo. p. 43) (Q: "So February 20th, this particular bond, February 20th, 2007, it appears that this request has been approved, is that your understanding of this letter?" A: "It says we're willing to support so I assume so.").

[2] Ohio Casualty has, in effect, eleven separate claims over the two complaints: (1) an agreement claim against Cox individually, (2) an agreement claim against Cox as Administratrix, (3) a statutory claim against Cox as Administratrix, (4) an exoneration claim against Cox individually, (5) an exoneration claim against Cox as Administratrix, (6) a *quia timet* claim against Cox individually, (7) a *quia timet* claim against Cox as Administratrix, (8) a specific performance claim against Cox individually, (9) a specific performance claim against Cox as Administratrix,

$900,000.00. Cox instituted a third-party complaint against Catlett (the witness to her purported signature), Henry (the notary), and Western Surety Company (which bonded Henry as a notary, *see* DE #5-2).[3] The case traversed a prior round of summary judgment motions.[4] The Court previously resolved filed motions *in limine*. DE #132 (Order). The Court now recommends resolutions to the pending dispositive motions and fee request.

## I. OHIO CASUALTY'S SUMMARY JUDGMENT MOTIONS (DE ##120, 121)

At the outset, the Court must make a choice of law determination. The Court, in this diversity case, applies Kentucky's substantive law. *See Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *see also Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) ("In federal diversity actions, state law governs substantive issues[.]"). The parties do not dispute that Kentucky law applies (and indeed they rely on it).

### *A. Standard of Review*[5]

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

(10) an access to books claim against Cox individually, and (11) an access to books claim against Cox as Administratrix. *See* DE ##1, 30.

[3] Likewise, Cox effectively has four separate third-party claims: (1) a negligence claim against Catlett as agreement witness, (2) a negligence claim against Henry as agreement notary, (3) a statutory claim against Henry as notary, and (4) a bond-based (as between Henry and Western Surety) claim against Western Surety. *See* DE #5.

[4] The prior motions for summary judgment resulted in extensive filings and briefing (with attached exhibits). *See* DE ##41 (Ohio Casualty Motion for Partial Summary Judgment), 47 (Response), 52 (Reply), 92 (Order Denying); 49 (Cox Motion for Summary Judgment), 53 (Response), 56 (Reply), 99 (Order Denying); 50 (Ohio Casualty Second Motion for Partial Summary Judgment), 54 (Response), 55 (Reply), 99 (Order Denying); 64 (Cox Motion for Partial Summary Judgment), 69 (Response), 73 (Reply), 96 (Order Denying); 93 (Ohio Casualty Motion for Reconsideration of Denial of Motion for Partial Summary Judgment), 94 (Response), 95 (Reply), 100 (Order Denying).

[5] This standard of review applies to all the motions for summary judgment that the Court addresses in this Order.

Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552. If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (Brennan, J., dissenting) (citation omitted); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment

burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it" (citation and internal quotation marks omitted)). "If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) (emphasis in original).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).[6]

[6] The parties engaged in no further briefing on DE ##120, 121, 122. Failure to respond is not itself grounds for the Court to grant summary judgment because summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (*per curiam*); *see also Green v. United States*, No. 11-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to respond is consequential, though, if the precipitating motion has merit.

*B. Discussion*

Plaintiff Ohio Casualty first renews its motions for partial summary judgment on Counts I and II of its Complaint and Count VI of its Amended Complaint.[7] DE ##120, 121. The Court previously denied the request for summary judgment on Counts I and II. *See* DE #99 (Memo. Opinion & Order), at 15-16. The Court permitted the parties to re-file dispositive motions, DE #119, so Plaintiff's renewed motion is procedurally proper. The Court previously denied without prejudice the request on Count VI. DE #92 (Order). Plaintiff may thus properly renew its motion, and, regardless, the Court gave leave to re-file dispositive motions. Summary judgment is appropriate as to Counts I, II, and VI against the Estate.[8] Plaintiff's motions and the record citations establish facts, as to which there is no material dispute, warranting judgment on the indemnity and related exoneration claims premised on the underlying liability of David Cox.[9]

The following are not genuinely disputed:

---

[7] These are its agreement-based and statutory claims against Cox as Administratrix.

[8] The motions do not address claims against Barbara Cox individually. Cox denies that she signed or is bound by the Indemnity Agreement. *See, e.g.*, DE ##51-1 (Cox Depo.), at 21, 51-2 (Cox Depo.), at 65. There is competing proof in this regard, including expert opinions (DE #53-7) and other factors indicative of signature. However, her denial alone is adequate to create a triable fact issue. *See Moran v. Al Basit LLC*, ___ F.3d ___, ___, No. 14-2335, 2015 WL 3448655, at *5 (6th Cir. June 1, 2015) (holding that an individual party's "testimony was itself sufficient to create a genuine issue of material fact"). The date discrepancy regarding signature is certainly a factor. The notarization pegs execution to February 1, but it is fairly clear that GCH would not have had the document until later in February. DE #49-5. This may, to Plaintiff, be an explainable business practice. DE #55-1, at ¶ 3 (Ohio Casualty witness describing practice of harmonizing signature date with agreement effective date). The date problem helps Cox factually (by, *e.g.*, creating a credibility problem for the notary and witness), but she does not contend that the date issues invalidate the Indemnity Agreement as to David Cox.

[9] Judge Wilhoit earlier denied summary judgment based on the status of the case, the development of the record, and the arguments then presented. The undersigned observes that, since then, discovery and other procedural events have clarified the record and Cox has changed counsel, signifying some tactical evolution in the matter. In any event, the Court can only decide the motions before it, as presented, and thus makes the recommendations stated in this opinion.

First, David Cox did sign the Indemnity Agreement.[10] While there are questions about Barbara Cox's signature, there are none regarding David Cox's. At deposition, Barbara Cox admitted she has no evidence to dispute that the signature is his and no evidence to avoid operation of the Indemnity Agreement as to David Cox. DE #51-2 (Cox Depo.), at 62-63 (discussing Indemnity Agreement, agreeing that signature "appear[s] to be" the signature of David Cox and agreeing that she has no "reason to dispute that is, in fact, David Cox's signature"); *id.* at 66 ("That—as far as I know, that is his signature[.]"); *id.* at 67 (agreeing that she has no knowledge "of any fact that would dispute that this is his signature"); DE #51-1, at 27 (indicating familiarity with signature). Further, Plaintiff offered affidavit and other proof regarding the entry and execution of the Agreement by David Cox. *See* DE #22-5 (Henry Affidavit); DE #45 (Henry Depo.), at 4, 8 (Depo. pp. 14, 29-30) (discussing typical process of notarization); *id.* at 16 (Depo. p. 61) (inferring signature from practice and fact of execution). In later briefing, Barbara Cox expressly and unequivocally admitted that David Cox was party to that Agreement. Cox, who is the Estate's fiduciary and thus speaks for it, stated in the brief's "essential facts":

> On or about February 1, 2007, David Cox, sole proprietor of DBR Engineering, executed an Agreement of Indemnity. David Cox . . . executed the document as Sole Proprietor. David also executed the document as Indemnitor.

DE #125-1, at 2 (citation removed).

Second, Ohio Casualty demonstrated entry of the precipitating bonds. Cox nowhere disputes that the bonds themselves, by which Ohio Casualty acted as surety on the relevant DBR jobs, were operative. *See* DE ##120-2, 120-3, 121-2. Plaintiff's affiant confirms bond entry and

[10] The Court deals with Cox's arguments, such as they are, directed against the Agreement itself in a later part of this decision. None of those arguments impairs effectiveness of the Agreement as to or thwarts summary judgment against the Estate.

fulfillment of the bond obligations. The Estate contests none of this proof, and all of it is effective under the movant's summary judgment burden.

Third, by the same exhibits, Ohio Casualty demonstrated its fulfillment of surety activities under the bonds; Plaintiff documented performance and payment obligations that it met on behalf of the principal, DBR, which Mr. Cox owned and operated as a sole proprietor. *See* DE ##120-2, 120-3, 121-2. Although the Estate denied liability (by its Answer and by its state probate management), as a defendant it must now actively demonstrate a basis to avoid the agreement and statutory impact of payments by the surety. It has not done so. The Agreement recognizes that submissions for payment by the surety *prima facie* establish the basis for liability. *See* DE #1-1 (Indemnity Agreement), at ¶ Second ("the vouchers or other evidence of any such payments made by the surety shall be *prima facie* evidence of the fact and amount of our liability to the surety"). Ohio Casualty now has submitted sufficient justificatory proof under the parties' own agreement and the Rule 56 rubric.

Indeed, the Estate made no response whatsoever to the motions presented. This means that, to the extent Plaintiff properly carried its movant burden, the Estate did not meet that showing by efforting the respondent's burden. Such default would not automatically result in judgment, but here, the effect is to remove from doubt the factual litany just reported. Those facts impel judgment in this scenario, as to the Estate under the Indemnity Agreement and exoneration claim (the two theories really being one and the same—Agreement enforcement regarding bond losses).

The statutory claim fares the same—the Estate is liable given the payments made on DBR's behalf by Ohio Casualty. This obligation stems from the surety relationship and its effect, not the formal Indemnity Agreement. Again, there is no dispute that David Cox sought the

bonds, that Ohio Casualty issued the bonds, and that Ohio Casualty fulfilled the bond obligations by the payments established. Plaintiff demonstrates each predicate to recovery under KRS 412.080—that it was surety under the bonds in the record, that it paid amounts on behalf of its principal, and that, by its action at law, the principal, here the Estate, must repay the surety. The statute unequivocally requires exoneration of a surety that pays. *E.g.*, *Lyndon Prop. Ins. Co. v. Price*, No. 5:12-343-DCR, 2014 WL 1338572, at *3 (E.D. Ky. Apr. 3, 2014); *Napier v. Duff*, 136 S.W.2d 1083, 1085 (Ky. 1939). Ohio Casualty proves its entitlement, and the Estate offers no response (and no proof) to counter the showing. The Court recommends judgment against the Estate as to Count VI.

Thus, the Court recommends summary judgment as to Counts I and II against the Estate. This would establish breach of the Indemnity Agreement, enforce the Second paragraph of the Agreement, and adjudge the Estate liable to "save the surety harmless from and against any and all loss, cost, claim, demand, liability and expenses" related to the bonds at issue. As to those Counts, the Judgment amount demonstrated is $759,997.44.[11] On Count VI, Plaintiff seeks only statutory exoneration for amounts paid. The Court recommends summary judgment against the Estate on that claim, in the same sought and established amount of $759,997.44.

[11] The Court reached this figure by adding the values in the table at DE #120-2, at ¶ 5. Ohio Casualty claims entitlement to $803,486.66 or $833,852.92, DE #120-1, at 7 (no explanation of the discrepancy), but this is not the sum of the individual claims. Plaintiff later adopted the awarded figure. DE #126, at 4. The motion also seeks $73,855.48 in expenses, but the Rumpf affidavit and the attachments supporting it evidently encompass only bond payments, not the additional expense amount. Absent proof of the further amount, the Court obviously will not include it. [Adding the claimed expenses with the amount the Court here awards totals the prior $833,852.92 figure.] More broadly, Ohio Casualty does not account for the additional $165,967.65 (or more) it seeks from its total claim. *See* DE #120-3, at ¶ 3 ("The current amount claimed is $925,965.09 plus [] attorney's fees[.]"). The Court awards here only what the Rule 56 process establishes as indisputably due.

## II. CATLETT, HENRY, AND WESTERN SURETY'S SUMMARY JUDGMENT MOTION (DE #122)

Third Party Defendants Jerry Catlett, David Henry, and Western Surety Company (collectively, "TPDs") move for summary judgment based on a three-part argument: that (1) the undisputed evidence establishes that Cox signed the Indemnity Agreement (and thus the witnessing and notarization were proper); (2) there is no evidence on proximate causation; and (3) there is no evidence on damages. DE #122-2, at 5-10. Critically, Cox only filed her Third Party Complaint ***individually***. DE #5, at 1. She sued for negligence, violations of KRS 423.010, *et seq.*, and to enforce Western Surety's bond. *Id.* She sought "damages . . . in any amount sought by" Ohio Casualty, "damages . . . including all pain and suffering," "the amount of the surety bond against Western Surety[,]" "court costs herein expended, including reasonable attorneys' fees[,]" and "statutory damages allowed for [TPDs'] violation of federal and state statute[.]" *Id.* at 7.

The Court has previously determined that fact questions remain concerning whether Cox herself signed the Agreement. TDPs' first argument—that "the undisputed evidence establishes that Mrs. Cox signed the Indemnity Agreement[,]" DE #122-2, at 6 (emphasis removed)—does not change this posture. As the Court has catalogued, the evidence does not so establish. Again, these key fact questions cannot be resolved on summary judgment. There is competing evidence on the authenticity of Cox's purported signature.

This does not end their argument, however. TPDs contend that regardless of whether Cox signed the Agreement, they cannot be liable—more precisely, if (1) Cox signed the Agreement, then the witnessing and notarization were valid and they are not liable, or if (2) Cox *did not* sign

the Agreement, then she is not liable to Ohio Casualty[12] and thus suffered no injury proximately caused by TPDs. Thus, under the argument, in either factual result (and there is evidence to support either), TPDs cannot be liable to Cox.[13]

Cox sued Catlett and Henry for negligence, Henry for a violation of notary duties under KRS chapter 423, and Western Surety to recover on its bond with Henry. DE #5 (Third-Party Complaint). In Kentucky, the general elements of negligence are "that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Element 3 consists of "two distinct elements: actual injury or harm to the plaintiff *and* legal causation between the defendant's breach and the plaintiff's injury." *Id.* at 88-89 (emphasis in original).

As set out above, assuming the existence of a duty, the record is replete with factual questions regarding breach. The next step in the analysis is injury—both actual injury and legal causation elements. Liability for negligence thus requires a showing of proximate causation. *Nunan v. Bennett*, 212 S.W. 570, 573 (Ky. 1919). "The question of proximate cause is a factual one, not a legal one, depending upon whether the evidence shows that the results of the misconduct are reasonably foreseeable." *Watts v. K, S & H*, 957 S.W.2d 233, 239 (Ky. 1997) (internal alteration omitted) (quoting and citing *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 333-34 (Ky. 1987), *superseded by statute as stated in DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky. 1999)). Kentucky courts "always have

[12] Per the argument, forged agreements are void. *Commonwealth, for Use & Benefit of Eversole v. West*, 87 S.W.2d 385, 386 (Ky. 1935) ("A forged instrument is a void instrument, and a void instrument is no instrument. There can be no legal right based upon it.").

[13] Judge Coffman rejected this argument in TPDs' original, pre-answer motion to dismiss because TPDs did "not address the elements of recovery of all the claims brought in the third-party complaint and therefore fail[ed] to show that each of Cox's claims for relief [wa]s implausible." DE #17 (Memo. Opinion & Order), at 4.

determined proximate cause on the basis of whether the injury is a natural and probable consequence of the negligent act, which test involves the element of foreseeability." *Ohio Cas. Ins. Co. v. Commonwealth, Dep't of Highways*, 479 S.W.2d 603, 605 (Ky. Ct. App. 1972). "If reasonable minds could differ as to whether the injury was a natural and probable consequences of the negligent act, the question is for the jury." *Id.*

Setting aside proximate cause as an issue,[14] actual injury is an essential element of a claim to recovery. *See, e.g.*, *Pathways*, 113 S.W.3d at 88-89 (requiring "actual injury or harm to the plaintiff" to succeed in a negligence case). Regarding Cox's claims of injuries and damages, it is certainly clear that if Cox properly signed the agreement, TPDs face no liability. The trickier question involves scenario 2. Even if Cox did not sign and thus is not individually liable to Ohio Casualty, she still argues that she is entitled to damages from TPDs resulting from emotional distress and her attorney fees. Particularly, she seeks "damages . . . including all pain and suffering," as well as "reasonable attorneys' fees[.]" DE #5, at 7. Cox is not clear for what "pain and suffering" she seeks compensation. She does not allege TPDs physically harmed her in any way.[15] Her witness list averred that she "will testify concerning [] mental anguish and grief[,]" as will Bryan and Ryan Cox. DE #86, at 2. Mental anguish and grief are claims of emotional injury. *See, e.g.*, *Ind. Ins. Co. v. Demetre*, ___ S.W.3d ___, ___, No. 2013-CA-338-MR, 2015 WL 393041, at *12 (Ky. Ct. App. Jan. 30, 2015) (subsuming "emotional pain and suffering, stress worry, anxiety or mental anguish" under "emotional distress"); *Randall v. W. Union Tel. Co.*,

---

[14] This turns on foreseeability. The Court would view emotional and fiscal harm flowing from an improperly (or falsely) notarized or witnessed document as potentially recoverable under a negligence theory. However, the other problems with the claim make it unnecessary to address proximate cause as a standalone argument.

[15] *See, e.g.*, *Bayless v. Boyer*, 180 S.W.3d 439, 444 (Ky. 2005) ("pain and suffering" signified additional physical pain resulting from treatment of a fractured wrist); *Miller v. Swift*, 42 S.W.3d 599, 600 (Ky. 2001) ("pain and suffering" signified enhanced pain due to specific medical conditions after a car accident resulting in her injury).

107 S.W. 235 (Ky. 1908) (treating claim for "mental anguish" damages regarding failure to deliver a telegram announcing the death of Randall's fiancé as a claim for damages for mental suffering).

As TPDs contend, in Kentucky, a "plaintiff claiming emotional distress must satisfy the elements of a general negligence claim, as well as show a severe or serious emotional injury, supported by expert evidence." *Osborne v. Keeney*, 399 S.W.3d 1, 23 (Ky. 2012); *id.* at 6 (requiring "expert or scientific proof[] that the claimed emotional injury is severe or serious" to permit recovery); *see also Gregory v. Burnett*, 577 F. App'x 512, 520 (6th Cir. 2014) (*per curiam*) ("Gregory did not present expert testimony supporting his claimed emotional damages as Kentucky law requires[.]").[16] Cox has submitted no medical records.[17] She has identified no physical harm or other specific injury. She presents no identified or disclosed expert. The record contains no evidence that would support a showing of pain and suffering or other cognizable emotional damage under the applicable proof standard.

On attorney fees, the only evidence in the record shows that DBR Engineering, and later, "The Estate of David Cox DBA DBR Engineering" paid attorney fees. DE ##122-8, at 3, 6; 51-5 (various bank records), at 50-72. Cox brings her third party complaint **individually only**, but she has presented no proof on individual damages vis-à-vis attorney fees. Assuming she meets the other requirements for her negligence claim, she has presented no proof regarding **individual** damages. The evidence does not reveal that Cox individually paid any attorney fees. Because Cox has presented no proof on an essential element of her negligence claims, in response to a

[16] This makes sense, given the Kentucky courts' historical treatment of mental anguish claims. *See, e.g.*, *Gardner v. Cumberland Tel. Co.*, 268 S.W. 1108, 1110 (Ky. 1925) ("It is easy to assert a claim of mental anguish and very hard to disprove it, the claim resting upon a mental condition, not capable of rebuttal by evidence within the reach or power of the defendant.").
[17] *See also Dudley v. Stevens*, 338 S.W.3d 774, 776-77 (Ky. 2011) ("It would be fundamentally unfair to permit Appellant to allege and prove mental anguish caused by the negligence while denying the Real Parties in Interest from reviewing her mental health records[.]").

well-supported motion, Catlett and Henry are entitled to summary judgment on Count I of the Third-Party Complaint.

The Court reaches a similar conclusion on Count II. In the Third-Party Complaint, Cox quotes KRS 423.130 but does not allege a violation of that particular subsection. She alleges Henry violated KRS 423.010 "and the oath of his office" by allegedly notarizing her forged signature. She seeks damages in an amount no less than the amount sought by Ohio Casualty. Assuming that an individual can sue for damages for a violation of a provision of KRS chapter 423 (the statutes are silent as to enforcement (aside from KRS 423.990) and a private right of action),[18] if Cox did not sign the Agreement, as above, she has presented no proof regarding injury / damages recoverable from Henry for an alleged violation of a statute. Cox individually would have no liability to Ohio Casualty, and the record contains no cognizable evidence on pain and suffering or individual attorney fees.[19] Henry is thus entitled to summary judgment on Count II.

Count III necessitates a different analysis; the potential damages ($500.00) stem from a different source (the Western Surety—Henry bond) than in the prior Counts. Cox sues Western

---

[18] *But see, e.g.*, *Neal v. Taylor*, 9 Bush 380, 385 (Ky. 1872) ("[I]f by reason of the negligence of the notary in the performance of this duty the holder of the paper loses his debt, the notary should be made liable therefor."); *id.* at 387 ("[T]here has been **no such negligence shown** upon the part of the appellee [Taylor, the notary] as to enable the appellants to maintain this action." (emphasis added)).

However, a "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation[.]" KRS 446.070. This statute "was passed to remove any doubt that might arise as to the right of a person for whose protection a statute was passed to recover for a violation of that statute . . . where by its terms the statute did not prescribe the remedy for its enforcement or violation." *Hackney v. Fordson Coal Co.*, 19 S.W.2d 989, 990 (Ky. 1929); *see also Macglashan v. ABS Lincs KY, Inc.*, 448 S.W.3d 792 (Ky. 2014). The Court does not decide this issue.

[19] Nothing in *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437 (Ky. 1997), alters this conclusion. "While damages for anxiety and mental anguish are recoverable in an action for statutory bad faith," *id.* at 454, "[t]he proof must be clear and satisfactory[.]" Again, here, as Movants contend, Cox has presented no evidence.

Surety to recover on its notary bond with Henry. "Actions may be brought from time to time on any bond required by law for the discharge or performance of any public or fiduciary office, trust or employment, in the name of the Commonwealth, for its benefit or **for that of any person injured by a breach of the covenant** or condition, at the proper costs of the party suing, against the parties jointly or severally . . . . Recovery against the surety shall be limited to the amount of the penalty fixed in the bond[.]" KRS 63.070 (emphasis added). Ultimately, Cox's individual bond claim cannot succeed because she has not shown that she was "injured by a breach" of Henry's duties as a notary—an essential element of the statutory claim. *See also Aetna Cas. & Surety Co. v. Commonwealth to Use of Andres*, 25 S.W.2d 51 (Ky. 1930) ("[W]hen an officer performs an act which he is authorized by law to perform, which is within his official duties, **and which results in injury to another**, he is liable." (emphasis added)). Again, if she did not sign the Agreement (and thus Henry would have notarized a forgery), she is not liable to Ohio Casualty, and she has offered no evidence on pain and suffering or individual attorney fees. Thus, Western Surety is entitled to summary judgment on Count III.

The TPDs met their burden. The burden then shifted to Cox, but she did not respond or present contrary proof. *Celotex Corp.*, 106. S. Ct. at 2252-53. The record contains no proof on an essential element of Cox's claims—actual injury, leading to recognizable damages. Thus, under either disputed factual scenario—whether Cox signed the Agreement or not—TPDs cannot be liable to Cox individually (the only capacity in which she brought the Third Party Complaint) on this record due to the lack of evidence on injury. "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552. Because "[o]nly disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment[,]" *Anderson*, 106 S. Ct. at 2510, and because TPDs accordingly are entitled to judgment as a matter of law on the individual Third Party Complaint, the Court **RECOMMENDS** that the District Court **GRANT** DE #122.

## III. COX'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (DE #125)

Defendant and Third Party Plaintiff Cox, individually and as Administratrix of the Estate of David Cox, moves to dismiss the Complaint for failure to state a claim on which relief can be granted. DE #125. Cox also moves for summary judgment. *Id.* Plaintiff responded. DE #126. Cox replied. DE #127. With Court permission, Plaintiff filed a surreply. DE #131.

Cox argues that "the Agreement of Indemnity does not meet the requirements of KRS 371.065. It is invalid[.]" DE #125-1, at 4. She "denies liability based on lack of consideration, estoppel, and her guaranty being against public policy and the regulations of the Equal Credit Opportunity Act (ECOA)." *Id.*

In her "reply," Cox introduces entirely new arguments. She first argues that the Indemnity Agreement is inadmissible under certain evidence rule(s). DE #127, at 3-5. She restates the KRS 371.065 claims. *Id.* at 5-6. Finally, she claims that Plaintiff did not plead statutory liability of Mr. Cox's estate. *Id.* at 7.

Cox's motion is first problematic because it purports to be simultaneously a motion for judgment on the pleadings (self-styled as a Rule 12(b)(6) motion) and a motion for summary judgment.[20] As an initial matter, Cox has not complied with Rule 12(b). She did not make her 12(b)(6) motion "before pleading"; instead, she filed it in November 2014—over 3 years after Ohio Casualty sued. But a failure to state a claim defense may be raised "by a motion under Rule

[20] The motion seems to divide the relief Cox seeks as follows: (1) Complaint dismissal based on the KRS 371.065 argument and (2) summary judgment (conceptually, as an individual defendant only) on the estoppel, consideration, and ECOA arguments. *See* DE #125, at 1-2.

12(c)[.]" Fed. R. Civ. P. 12(h)(2)(B). The Court thus construes Cox's 12(b)(6) motion as a 12(c) motion. *See Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, No. 5:11-CV-615, 2012 WL 443254, at *1 (N.D. Ohio Feb. 10, 2012); *Lindsay v. Yates*, 498 F.3d 434, 436 n.4 (6th Cir. 2007). A Rule 12(c) motion is generally treated the same as a Rule 12(b)(6) motion. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks removed) (quoting and citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 127 S. Ct. at 1965). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* at 336. To the extent Cox presents a summary judgment motion, the standard in Part I.A governs.[21]

First, Cox moves for Complaint dismissal (and/or summary judgment) based on KRS 371.065. "No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the

---

[21] *See also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56.")

maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates." KRS 371.065. However, "the legislature did not intend to include within [KRS 371.065's] scope the type of indemnity agreements at issue in this case." *Intercargo Ins. Co. v. B.W. Farrell, Inc.*, 89 S.W.3d 422, 426 (Ky. Ct. App. 2002). The court found "no . . . legislative intent to protect those . . . who have promised to hold harmless and provide reimbursement to an entity . . . who stood in the shoes of the indemnitor(s) and made payment on an obligation incurred by and owed by the indemnitor(s) to a third party[.]" *Id.*[22]

The argument largely turns on the definitions of guaranty and indemnity. "A contract of indemnity is an obligation or duty requiring a promisor . . . to make good any loss or damage which another has incurred while acting at the request or for the benefit of the promisor." *Id.* "A guaranty agreement is one in which the promisor protects his promisee from liability for a debt resulting from the failure of a third party to honor an obligation to that promisee—thus creating a secondary liability. In contrast, an indemnity contract creates a direct, primary liability between the promisor and promisee that is original and independent of any other obligation." *Id.* "[T]his distinction is critical to the issue of whether the Legislature intended to include indemnity agreements within the ambit of KRS 371.065."[23] *Id.* The court concluded the statute protects only guarantors, not indemnitors. The agreement at issue in this case—facially labeled an "Agreement of Indemnity"—falls squarely within *Intercargo*'s conception of an indemnity contract. It is an obligation (nominally by DBR and the Coxes, the promisors) to pay losses that

[22] Factually, *Intercargo* directly parallels this case. Simplifying somewhat, Intercargo Insurance Company acted as surety and issued performance bonds for B.W. Farrell, Inc. ("Farrell"). In turn, Farrell executed two indemnity agreements promising to hold Intercargo harmless from claims arising from those bonds (on which Farrell was a principal). Farrell defaulted, and Intercargo paid a claim against Farrell's performance bond, which the indemnifiers refused to reimburse. 89 S.W.3d at 424-25.

[23] Cox ignores *Intercargo* when she asserts that the "difference between a guaranty agreement and an indemnity agreement is a distinction without a difference." DE #127, at 5. The Kentucky courts have noted a "critical" difference. 89 S.W.3d at 426.

another (Ohio Casualty) incurred while acting for their benefit (being surety and executing / performing under bonds). It created a direct liability between promisor and promisee independent, in *Intercargo*'s usage, of any other obligation. It does *not* entail the Coxes protecting Ohio Casualty from liability for a debt resulting from a third party's failure to honor an obligation to Ohio Casualty.

Cox contends *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609 (Ky. 2004) vitiates this analysis. At issue in *Wheeler*, however, was an "Application for Credit" that contained a section titled "GUARANTY AGREEMENT." *Id.* at 610. *Wheeler* does not cite *Intercargo*, and any form of the word "indemnity" appears only once, in a passage quoting at length from the operative document in the suit. *Id.* at 611 ("It is understood that **this guaranty** shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of the Company." (emphasis added)). The Court cannot accept the contention that *Wheeler* overruled *Intercargo* sub silentio, without citation or discussion. *Wheeler* simply held that KRS 371.065 applies to all categories of guaranties. *Id.* at 613-14. An indemnity agreement—not a guaranty agreement—is at issue here. Because *Intercargo* forecloses Cox's KRS 371.065 argument, her claim fails. *Accord Frontier Ins. Co. in Rehab. v. MC Mgmt., Inc.*, No. 3:06-CV-597-H, 2009 WL 541301, at *6 n.9 (W.D. Ky. Mar. 4, 2009) (relying on *Intercargo* to reject a KRS 371.065 claim related to an indemnity agreement). The Indemnity Agreement here need not, to be valid, comply with KRS 371.065's strictures.[24]

Next, Cox moves for summary judgment (and/or Complaint dismissal) based on estoppel. DE #125-1, at 7-9. "Equitable estoppel is a defensive doctrine founded on the principles of fraud,

[24] *Intercargo* also explained that the term "instrument" in KRS 371.065 "was intended to apply to instruments extending credit rather than to performance bonds." 89 S.W.3d at 426-27. Because Cox's argument fails on the guaranty / indemnity distinction, the Court need not consider whether it independently fails on the "instrument" argument.

under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious our detrimental way." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 594-95 (Ky. 2012). Under Kentucky law, the elements of equitable estoppel are as follows: "(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010) (the "estoppel elements"). "[B]roadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." *Id.* (the "party elements").[25]

Cox specifically argues that Ohio Casualty "should be estopped from asserting liability against [her] due to [its] failure to give notice of the issuance of new bonds [as contemplated in ¶ 14 of the Agreement] depriving her of the opportunity to terminate her liability on said bonds[.]" DE #125-1, at 8-9. Plaintiff responds that it "cannot be estopped from enforcing an indemnity agreement that does not constitute a guaranty agreement." DE #126, at 11. Cox's precise

---

[25] Stated in a more streamlined way: "Equitable estoppel has five elements: (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment." *Parker v. Ky. Housing Corp.*, Nos. 2012-CA-1733-MR, 2012-CA-1787-MR, 2015 WL 301222, at *4 (Ky. Ct. App. Jan. 23, 2015) (internal quotation marks omitted) (citing *Gray v. Jackson Purchase Prod. Credit Ass'n*, 691 S.W.2d 904, 906 (Ky. Ct. App. 1985)).

argument remains elusive. To begin with, ¶ 14 contains no independent notice requirement. It merely provides termination mechanics. Indeed, Cox "waive[d] notice of the execution of such bonds." DE #1-1, at ¶ 8. Regarding the estoppel proof requirements, on party element 1, for example, Cox makes no argument as to why she lacked the means of acquiring relevant knowledge. *See Fluke Corp.*, 306 S.W.3d at 62. In addition to problem(s) with her own qualification(s), Cox offers no evidence, for example, on estoppel element 1—that is, that Ohio Casualty falsely represented or affirmatively concealed material facts. *See id.* at 63 (requiring "affirmative conduct to misrepresent or conceal facts"). Cox has not justified summary judgment or Complaint dismissal based on estoppel. The Agreement expressly applies to extant and future bonds. DE #1-1, at ¶ Second ("bonds which may have been or may hereinafter be executed or procured"). Further, the indemnitors specifically waived the right to notice of future bond issuance. *Id.* ¶ Eighth ("That the indemnitors, if any, hereby waive notice of the execution of such bonds[.]"); *id.* (agreeing to continued liability "notwithstanding any notice of any kind to which we might have been or be entitled"). Estoppel plainly does not apply as a dispositive theory.

Next, Cox argues she did not receive consideration for her signature on the Indemnity Agreement. DE #125-1, at 9-10. Consideration is a "benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943). "[G]enerally speaking, a substantial failure of consideration ordinarily justifies rescission of a contract." *Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288, 293 (Ky. Ct. App. 2011). The Court initially notes that Cox did not plead or seek rescission. *See also, e.g.*, *Beck v. Chapman*, No. 2004-CA-515-MR, 2005 WL 678627, at *2 (Ky. Ct. App. Mar. 25, 2005) (remedy for lack of consideration was rescission). More importantly, in the Agreement,

Cox (assuming she signed it) "acknowledged" payment of "the sum of One Dollar ($1.00) . . . to the indemnitors[,]" as well as receipt of "other good and valuable considerations[.]" DE #1-1, at 2. Cox presents no contrary proof to her (purported) explicit consideration acknowledgment in the Agreement—instead, only a conclusory, unsupported argument.[26] She has not justified summary judgment or Complaint dismissal on this ground. Further, the only proof is that Ohio Casualty required the Indemnity Agreement as a bond issuance predicate. *See, e.g.*, DE ##46 (Chapman Depo.), at 4 (Depo. p. 15); 45 (Henry Depo.), at 11 (Depo. p. 41) (discussing Ohio Casualty letter directing that indemnity agreement be executed in advance of bond issuance); *id.* at 43 (discussing typical document sequence, with indemnity agreement preceding bond).

Next, Cox argues the agreement violates certain ECOA regulations (she refers only to "Regulation B" with no citation to any specific provision of law or regulation). DE #125-1, at 10-11. She asserts that a "cosigner or similar party (indemnitor) cannot be a wife." *Id.* at 10. She asserts that it "was clearly against public policy that Surety requested Barbara Cox to sign as a guarantor." *Id.* at 10-11. Plaintiff replies that the ECOA "does not apply[.]" DE #126, at 11. The Court notes that Cox has not previously raised an ECOA defense, arguing for Agreement invalidity on this basis for the first time on summary judgment.

ECOA provides anti-discrimination protections in credit applications and transactions. 15 U.S.C. § 1691(a). Cox has not sufficiently established that the mere fact that "the indemnity agreement provided Surety may advance or make loans to the contractor[,]" DE #125-1, at 10, transforms Cox's individual involvement into a credit transaction.[27] *See* 12 C.F.R. § 202.1, *et*

---

[26] Indeed, she recognizes that she acknowledged consideration receipt earlier in the same motion. DE #125-1, at 2.

[27] Ohio Casualty is authorized "to advance or loan **to the contractor** [David Cox dba DBR Engineering] any money which the surety may see fit to advance to the contractor for the purpose of any contracts referred to in, or guaranteed by such bonds[.]" DE #1-1, at 3, ¶ 4 (emphasis added).

*seq*. Cox's indeterminate reference to "Regulation B" appears to refer to 12 C.F.R. § 202.7(d). The general rule in that subsection is that "a creditor shall not require the signature of an applicant's spouse . . . on any credit instrument if the applicant [otherwise] qualifies." *Id.* § 202.7(d)(1). Cox has not satisfied the summary judgment proof standard to show that Ohio Casualty meets the definition of a creditor or that the Indemnity Agreement qualifies as a "credit instrument" (and the Court has grave doubts regarding these issues). *Id.* § 202.2(*l*)-(m); *see also, e.g.*, *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 204 (4th Cir. 2002) ("[T]he issuance of surety bonds does not constitute a credit transaction as defined under the ECOA[.]"); *accord Liberty Mut. Ins. Co. v. Marine Elec. Co., Inc.*, No. 3:11-CV-562-H, 2012 WL 5207537, at *3 (W.D. Ky. Oct. 22, 2012). Based on the information presented, ECOA and its attendant regulations are inapposite, and, at the least, Cox has not sufficiently shown the statute's and/or regulations' applicability to justify summary judgment or Complaint dismissal. Cox has similarly not sufficiently proven that any circumstance surrounding Cox's purported signature violates public policy; her conclusory, unsupported argument is inadequate.

Finally, the Court addresses new arguments Cox raised in her "reply."[28] First, summary judgment or dismissal is inappropriate on Cox's evidence rules argument. First, the Federal Rules of Evidence determine admissibility in a diversity suit. *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir. 1990). Cox argues Fed. R. Evid. 803(6) (and possibly 902(11)) operate(s) to exclude the Agreement and seeks Compliant dismissal on this basis. DE #127, at 3-5. However, a "document accompanied by a certificate of acknowledgment that is lawfully executed by a

[28] This was improper procedurally. "Raising a new argument in [a] reply brief is improper . . . . It is well established that a reply brief is not the proper place to raise new arguments." *Malec v. Comm'r of Soc. Sec.*, No. 1:13-CV-919, 2014 WL 7653695, at *18 (W.D. Mich. Nov. 10, 2014) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) and *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). The Court cured the problem by allowing Ohio Casualty an additional brief. DE #130 (Order).

notary public" is self-authenticating and "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902(8); *see also, e.g.*, *Coward v. JP Morgan Chase Bank*, No. 2:11-CV-3378 GEB AC PS, 2013 WL 618163, at *4 (E.D. Cal. Feb. 19, 2013); *Citizens Against Longwall Mining v. Colt LLC*, No. 05-3279, 2008 WL 927970, at *1 (C.D. Ill. Apr. 7, 2009). The Agreement, at least facially, is accompanied by a corporate acknowledgment and two individual acknowledgements, all of which at least purport to be notarized. Further, the record contains proof that would independently authenticate the Agreement. *E.g.*, DE ##22-2 (Rumpf Affidavit), at ¶ 6 (testifying that the attached Indemnity Agreement "is a true and correct copy of the Agreement or Indemnity executed by [Mr. and Mrs. Cox]"); 22-5 (Henry Affidavit). The Court makes no final evidentiary determination but simply notes that Cox certainly has not sufficiently shown the Agreement's inadmissibility to justify summary judgment or Complaint dismissal. Second, Plaintiff did plead statutory liability regarding Mr. Cox's estate.[29] Cox's contrary posture is groundless. *See* DE #30 (Amended Complaint). The Court **RECOMMENDS** that the District Court wholly **DENY** DE #125. Movant does not justify the relief sought.

## IV. FEE AWARD (DE ##117, 118)

After recommending a preclusive sanction for Barbara Cox's culpable journal destruction, the Court recommended that the District Court award **only TPDs** their reasonable expenses, including attorney fees, associated with the award for sanctions. DE #102, at 20-22. The District Court adopted the recommendation and ordered Plaintiff and the TPDs to file

[29] Finally, to the extent Cox argues that the Indemnity Agreement does not cover later-executed bonds, *see* DE #127, at 6, the Agreement, as noted, contains language to the contrary. DE #1-1, at 2 (first "whereas" paragraph) ("such bonds," referenced throughout the Agreement, include "new bonds"); *id.* ¶ 2 ("[I]ndemnitors . . . will at all times indemnify and save the surety harmless from and against any and all loss . . . which it shall **at any time** sustain, incur, or be put to, for, by reason, or in consequence of such **bonds which have been or may hereinafter be executed**[.]" (emphases added)).

detailed fee requests and supporting affidavits. DE #115. Plaintiff and TPDs did so. DE ##117, 118. No party filed an objection or response.

The Court **RECOMMENDS** that the District Court **GRANT** DE #117 and **DENY** DE #118. The Court's recommendation was that only TPDs file a fee request and affidavit because Plaintiff did not make a fee shift motion. *See* DE #102, at 21 n.8. Even if Plaintiff had made the request, the Court "would not be inclined to grant" it because "Ohio Casualty was a bystander in the process of pursuing and litigating the topic." *Id.* at 21 n.9. Thus, the Court **recommends** that the District Court **not** award Plaintiff fees that it did not previously request and that it does not deserve.

Regarding TPDs' request, the Court has already found an award appropriate given Cox's intentional destruction of evidence central to the case. *See* DE #102; *see also* Fed. R. Civ. P. 37(b)(2)(C). Judge Wilhoit agreed. DE #115. The issue now is the proper amount. The Court awards "Third Party Defendants their reasonable expenses, including attorneys' fees, associated with the motion for sanctions." DE #102, at 21. To this end, TPDs' counsel attached a breakdown of expenses associated with the motion for sanctions and reply. DE #117-1. The Court has assessed all entries for reasonableness. The Court accepts counsel's verified application as reflecting the actual time spent in working on the motion and reply but makes the following alterations. The Court cuts the 7/2/13—BC2 entry; it involves research into a motion *in limine*, not the subject motion for sanctions. The Court similarly cuts the 9/3/13—ADN, 9/4/13—ADN, and 9/5/13—ADN entries; they involve jury instruction, pretrial, and trial memorandum work. The Court additionally severs the 9/9/13—ADN entry because it is after the date of TPDs' reply; the submitted research would have concerned spoliation for a different purpose. Finally, the filing gives the Court no indication of the purpose(s) of the alleged $87.30

in costs. The figure is handwritten beside a large white space. *See* DE #117-1, at 6. The Court thus declines to award this amount. These reductions total $1,540.00 in fees and $87.30 in costs.

The Court is aware it is awarding fees for 81.3 hours of work vis-à-vis two filings.[30] The fee amount requested (and awarded) is substantial. The briefing involved an uncommon factual background and weighty and complex issues of spoliation sanctions, including seeking dispositive relief (claims dismissal), and the fee award is commensurate with the severity of Cox's behavior. Cox does not quibble with the information reported (either total hours or rates charged), and the Court thus views the hours expended and rates charged as reasonable in this context, given Cox's inexcusable conduct. The award signifies, in part, additional sanction against Cox, aside from simply compensating TPDs for their reasonable expenses associated with the motion for sanctions. Ultimately, Cox should have to pay for her violative discovery practices and the TPDs' reasonable, responsive efforts. TPDs seek an amount that the Court, in context, after the above adjustments, deems reasonable.

Accordingly, the Court **RECOMMENDS** that the District Court **ORDER** the TPDs' award to be the amount of **$17,212.50**. This total, awarded **against Cox individually**,[31] shall immediately be due and payable to TPDs upon the District Court's adoption (or alteration) of

[30] Judge Wilhoit recently noted that "it boggles the mind that 57.1 hours were devoted to drafting a straight forward, garden-variety motion and memorandum." *Johnson v. Zimmer Holdings, Inc.*, No. 13-CV-82-HRW, 2014 WL 7177907, at *8 (E.D. Ky. Dec. 16, 2014) (emphasis removed). This fee request arose in a markedly different context than the *Zimmer* request. It is responsive to Cox's properly sanctioned behavior and represents partly a sanction against Cox on top of journal preclusion. Cox's evidence destruction came as a surprise, leading to immediate remedial action by counsel and the ultimate motion for sanctions (which included a potentially dispositive request of dismissal). The time invested is considerable—over 2 full-time work weeks of sole dedication to the motion and reply (with connected research, discussion, and consideration periods). Counsel verified, Cox does not dispute, and the Court accepts, that these time investments are "associated with the motion for sanctions." DE #115, at 1; *see also* DE ##102, at 21; 117, at 2-3 (stating the requested fees were incurred "in connection with the motion for sanctions"). Only Cox's wrongful actions resulted in these hours expended. The Court cannot say (and Cox does not argue) that they are unreasonable. Cox must pay for counsel's efforts.

[31] The Court found no culpable involvement by Cox's then-counsel.

same. The ultimate award (and precise amount) will depend upon the District Court's action on the undersigned's recommendation.

## V. PROSPECTIVE SCHEDULE

Once the dispositive motion process concludes, the matter should be ready for pretrial and trial scheduling. However, given the recommendations in this decision and the possibility of appeal or objection to Judge Wilhoit, the Court defers formulation of the schedule until Judge Wilhoit finally resolves the pending motions. Once that occurs, subject to guidance from Judge Wilhoit, the Court will set a date for pretrial filings, the pretrial, and the trial on remaining triable issues.

* * * * *

The Court issues this Recommended Disposition under 28 U.S.C. § 636(b)(1)(B) and pursuant to the District Court's referral. The parties should consult the statute and Fed. R. Civ. P. 72(b) for specific appeal rights and mechanics. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 5th day of June, 2015.




**Signed By:**

***Robert E. Wier*** REW

**United States Magistrate Judge**